[Civ. No. 253. Fourth Appellate District.—October 27, 1930.]

COUNTY OF RIVERSIDE (a Body Politic and Corporate), Respondent, v. CHARLES C. L. LESLIE, Appellant.

A. B. Edler for Appellant.

Albert Ford, District Attorney, for Respondent.

OWEN, J., *pro tem.*—The county of Riverside instituted this action to recover the sum of $40,000 from the defendant

under the provisions of section 2742 of the Political Code, alleging that the defendant had maliciously destroyed 400 young trees growing upon the highway known as Beaumont Avenue, the code section providing for a forfeiture of $100 for each tree destroyed. The complaint sets forth that the said highway is 100 feet wide and properly describes its location. It is also alleged that there is a duly organized and existing county board of forestry in Riverside County. The defendant appeared by answer and cross-complaint.

It appears that on September 12, 1888, there was presented to the board of supervisors of the county of San Bernardino a petition from certain freeholders of the county praying that a highway be laid out for a width of 100 feet running through the land of the defendant and cross-complainant; that pursuant to the petition the supervisors took certain steps toward the acquisition of the right of way. The legality of the procedure is attacked by the defendant in his cross-complaint as well as all other actions by the county which seek to establish an actual or implied dedication of the road. Claiming the ownership of the whole strip except a road 20 feet wide, the defendant seeks an injunction against the County of Riverside, its board of supervisors, board of forestry, and other persons, enjoining the placing of fences, the planting of trees, and the opening of the highway beyond the width of 20 feet.

To understand the situation properly, a detailed statement of all actions on the part of the county must be made. In the year 1893 the County of Riverside was created, the premises herein involved were thus transferred from San Bernardino County to the new county, the records of both counties being used in evidence in the trial. The minutes of the board of supervisors of San Bernardino County dated April 2, 1888, read as follows: ''Petitions for the opening of three new public roads in Beaumont were granted, the accompanying bonds approved and James Kennedy, C. F. Jost and Z. B. Stuart were appointed Road Viewers.'' Under date of May 7, 1888, were the following minutes: ''Report of Road Viewers on three proposed roads in Beaumont was accepted and two of the roads declared public highways, action on the third road being postponed. For a full description reference is made to the road book of this Board.''

The record of road surveys of San Bernardino County contains the following:

"At a regular meeting of the Board of Supervisors held on the 2nd day of April, 1888, the following action was taken by unanimous vote of all members present:

"In the matter of a petition of freeholders and residents of the 4th Road District praying for a county road in Beaumont and to establish some of the streets of Beaumont, a county road, the Road Viewers appointed to consider the same, viz., James Kennedy, C. F. Jost and Z. B. Stuart, having filed a report favorable to the desired action, the report was accepted and the petition granted. The following are the field notes of the proposed new road. Field Notes: Var. 14° 30″ E.

"Commencing at the intersection of 8th street and Beaumont avenue in Beaumont, thence north on center line of Beaumont avenue one mile to the Twp. line between Twps. 2 and 3 south, range 1 west, and extending 50 feet on each side of the center line of said avenue; thence north 1313 feet to R. L. Jenkins north line in section 34 T2N, R1W, and 20 feet on each side; thence north 1.75 miles to the north end of Beaumont avenue and extending 50 feet on each side";
(then follows a page of technical description which has nothing to do with describing the property in question).

"(Signed) Z. B. STUART,<br>
"County Surveyor."

The foregoing three references constitute the only action taken by the county of San Bernardino to constitute Beaumont Avenue a 100-foot county road, so far as the record before us shows. It appears that for a long period before this action was taken, a road zigzagged along the general course of the highway in question, serving Beaumont and other communities to the north. Subsequently the County of Riverside plowed and graded the road at various times to a width of from 20 to 30 feet. About the year 1916 the county placed stakes and plowed a furrow on each side of the road, 50 feet from the center. The lessee of the defendant informed the road overseer doing the work that the county only had a width of 30 feet; however, the workmen used whatever dirt was needed for fills within the 100 feet. At about this period the lessee of the defendant, or workmen under his direction, placed two fences along the lines of

the plowed furrows 50 feet from the center of the road, the fences, however, were not parallel, but the one on the west side of the road began about where the one on the east side stopped, the opposite end of each fence extending to the outer limit of defendant's land. These fences have remained intact from the time of their construction. The fence-posts on one side of the road are railroad ties, about 15 or 16 feet apart; the other fence is constructed of willow posts, there being two or three barbed-wire strands.

Pursuant to a resolution of intention dated March 21, 1923, after due posting and publication and the approval of plans, profiles and specifications, Road Improvement District No. 11 constructed an 18-foot pavement, five inches thick, along the center line of the right of way in question. The work called for three-foot shoulders to the pavement and the grading of the road to a width of 24 feet. In the month of April, 1927, the Rotary Club of Beaumont purchased about 400 blue and red gum trees (eucalyptus rostrada), which trees were planted with the assistance of the Boy Scouts about 50 feet apart, on each side of the road, and within the 100-foot limits thereof, through defendant's property. Plaintiff's witnesses testified that in July of that year most of the trees were living. Defendant testified that nearly all of them were dead. Dead or alive, it is admitted that defendant pulled them up.

The defendant testified that he never knew that the board of supervisors claimed a road through his property until the year 1927; that no notice of such claim was ever served on him, either by the board of supervisors of Riverside or of San Bernardino Counties; that he inherited his interest in the land, and the administration of the estate had been pending since 1889, and he was still the administrator; that the taxes on the estate were paid from a trust in Chicago, and he did not know if the taxes were ever paid; that he knew the pavement was being placed on the road about the time it was being finished; that the fences were put up with his knowledge, but not 50 feet from the center of the highway, with his consent; that several years ago he sought legal advice as to the width of the road and that he visited the premises about once each year, and at times, longer intervals.

Leslie Roberts, lessee of the defendant, testified that the land on both sides of the road had been cultivated outside

of the fences, to the graded portion of the road; that the fence on the east side had been standing for 30 years, and that the west fence was placed by a workman at his direction; that he had a controversy with the workman for placing it 50 feet from the center; that he remarked, "We will move it some of these days"; that it had never been removed, but that he had farmed both inside and outside of it; that in 1916 he had ordered the servant of the county off the land when a furrow was being plowed; that he had ordered the workmen off when they were plowing a furrow to plant the trees, but that they did not go. He further stated on cross-examination that he had protested to the workmen at the time of the paving, bacause of the use of dirt for fills within the 100-foot limit of the claimed highway, but had not protested to the board of supervisors or instituted any action.

It was testified to by witnesses for both parties that it was the general custom in Riverside County for farmers to cultivate to the used portion of highways for the purpose of planting and keeping down weeds.

The trial court found that Riverside County and the board of forestry are legal entities within the law; that Beaumont Avenue is 100 feet wide, and that the trees were growing in and along the highway; that the defendant destroyed the trees, but did not do so maliciously; that the land over which a 100-foot road is claimed is owned jointly by the defendant and the estate of George Leslie; that on April 2, 1888, a petition in due and legal form was received and filed by the board of supervisors of San Bernardino County, asking that a strip of land, which is now Beaumont Avenue, be declared and laid out as a public highway; that viewers were appointed, and that on May 7, 1888, the said board declared the strip to be a public highway of the width of 100 feet through defendant's land; that said order was duly entered in the minutes of the board and in the road register, and that thereafter, in the year 1888, the said avenue was laid out and worked by the county and used by the public as a highway, until the creation of Riverside County; that upon the organization of the latter county the said highway was entered in the road register as a highway 100 feet wide through defendant's land, and was mapped and platted in the road book as 100 feet wide by order of the board of supervisors of said county, and that at all times since the creation of said

county the said road has been used and maintained as a public highway. The court then finds as facts, the statements hereinbefore set forth as to plowing furrows, setting of stakes, and building of fences, and that the fences were maintained with the knowledge and consent of the defendant; that on May 21, 1923, Road District Improvement No. 21 was created; that defendant's property was contained therein, and the road improved in the manner herein described; that defendant's lands were contained in the assessment district, and that payments have been made by the trustees of the estate of George Leslie, deceased; that notice of the creation of the road district was regularly given as required by law, and the defendant made no objection or protest; that the road has been used as a public highway for more than five years, and such use has been open, notorious, continuous, uninterrupted and adverse to claims of the abutting land owners under claim and color of right, and that the defendant had knowledge of the use and the claims of the county. The court found generally against the allegations of the cross-complaint. We have set forth enough of the facts alleged by the parties to the action, and the findings of the court, to gain a clear picture of the controversy. Judgment followed the findings. The injunction was denied.

■ The first question presented is this: Was Beaumont Avenue established as a highway 100 feet wide by the action of the board of supervisors of San Bernardino County? The three excerpts heretofore quoted as the record of the board's transactions fall short of proof of a substantial compliance with the provisions of the Political Code of the year 1888, providing the method of laying out a new road. The facts that a "petition was presented", bonds were "approved" and "report of road viewers accepted" as outlined in the minutes of the board, may be probative of the steps taken. There were other procedural acts requisite and necessary, apparently never taken. There seems to have been an attempt to comply with sections 2681 to 2687, inclusive, of the Political Code, but the record is silent as to subdivision 4 of section 2686, providing that the report of the viewers must show the names of nonconsenting land owners, and the amount of damage each claims. That subdivision also provides that nonresident land owners shall be considered nonconsenting land owners, unless their written consent

shall be obtained. The defendant herein was a nonresident land owner, as was his predecessor in interest. No notice was ever given him. His consent was never obtained. The proceedings here are silent, as are apparently the records of the two counties, on the following requisite and/or jurisdictional steps to be taken before an owner may be deprived of his property, however great the public necessity; these steps being abridged from sections 2688, 2689 and 2690 of the Political Code, as it existed at the time:

The board of supervisors must fix a day for hearing the report of viewers; give notice to nonconsenting land owners of such hearing by publication; ascertain and declare the amount of damage awarded each nonconsenting land owner; order the amount of damages assessed by them set apart in the treasury; deem rejected any award of damage not accepted within ten days; direct proceedings to procure right of way when damage is rejected by suit instituted by the district attorney; declare the road opened when judgment is obtained.

Not one of the foregoing acts being performed, it cannot be said that the county gained even a shadowy right to a 100-foot strip through the land of a man wholly ignorant and unadvised of the initial proceedings had. It must be held, therefore, that Beaumont Avenue was not established 100 feet wide by any legal action of the board of supervisors of San Bernardino County. It must also be held that, said county having failed to institute suit for the right of way, or pay for same, as provided by the code, no 100-foot highway has been created by use and maintenance under color of right created by the ineffective action of the board of supervisors. Nor could the subsequent copying of the San Bernardino records into the records of the newly created Riverside County lend any "color of right" that would justify any action by the board of supervisors of the latter county, based upon the original action which failed wholly to meet even a substantial compliance with the law.

The district attorney urges that the highway has been, by implied dedication, made a thoroughfare 100 feet wide. The fact cited to warrant this claim consists of the building of two fences on the lands of defendant Leslie, each 50 feet from the center of the road. The California authority cited is *Sherwood* v. *Ahart*, 35 Cal. App. 84 [169

Pac. 240]. Without reviewing that case at length, the two quotations applicable here are as follows:

"Such dedication is implied from the long and continuous use of the said road with *full knowledge* of the land owners interested, without asking or receiving any permission, and *without objection from anyone* for a period of time beyond that required by law to bar the right of action. . . .

"We may add that in addition to such use of said road there are other circumstances disclosed by the evidence indicating an intention of the owner to so dedicate said land. One of these circumstances is found in the fact that the road was fenced on *both sides throughout its entire length on the land of the defendant, forming a lane through his land.*" (Italics supplied.)

In the present case it is clearly shown by the defense, with no testimony to the contrary, that the defendant did not know through a long period of years that the county claimed a 100-foot road. It is undisputed that the defendant and his agents objected on all occasions to any act on the part of the county asserting its claim to a road wider than the 20-foot strip admitted to have been acquired by user. That the plaintiff acquired no greater width by user is apparent from all the proofs adduced. As to the fences, they were not builded opposite each other. One fence was constructed on the west side of Beaumont Avenue, beginning at the south line of defendant's land, the other was on the east side of said road, beginning at the north line of defendant's land. A substantial part of the road in the center of defendant's land had no fence on either side. No lane was thus formed. The rule laid down in *Sherwood* v. *Ahart, supra,* cannot be held to apply here, where a different state of facts exists. There was no contradiction to defendant's proof that the fences had been constructed without his knowledge as to location, and in the absence of his lessee, by a hired man, who, without authority, lined the fences with other existing fences further along the avenue. That the defendant continued to farm the strip outside of the fences up to the 20-foot road does not further the idea of dedication by implication. If the defendant or his lessee had intended to dedicate the road 100 feet wide by the act of fencing it, such fences would have been placed on "*both sides throughout its entire length on the land of defendant,*"

*forming a lane through his land"*, and he would not have thereafter protested or stopped each encroachment by the county. We cannot hold that there was an implied dedication.

█ Respondent claims that appellant is estopped and barred by laches from asserting that the highway is but 20 feet wide. The consistent course of opposition and resistance by the defendant throughout the years to the county's claim of more than a road 20 feet in width would hardly bear out a claim that his further resistance is estopped and barred by laches. "The principal factors in determining . . . (the question) of laches are acquiescence and lapse of time." (*Chapman* v. *Bank of California,* 97 Cal. 155 [31 Pac. 896].) Laches not constituting evidence of acquiescence is no bar. (*Lux* v. *Haggin,* 69 Cal. 255 [4 Pac. 919, 10 Pac. 674].) At no time has defendant acquiesced in the 100-foot road, and we cannot continue the discussion of laches further, as he was guilty of none. █ Respondent's attorney makes no claim and cites no authority in his brief that the improving of the road to the narrower width in 1923 under the Road District Improvement Act of 1907 gave the county a right to the wider road, although in those proceedings Beaumont Avenue was shown to be 100 feet wide. The mere assumption of the width to be 100 feet will not control, unless proper action be taken to acquire the land in a manner provided by law.

█ It is urged by respondent that injunction should not issue in behalf of defendant, restraining the further planting of trees on defendant's land. Plaintiff county admitted in its answer to the cross-complaint that it intended to plant trees within the 100-foot right of way. It is claimed by respondent that an injunction will not lie to prevent the establishment of a public highway over which the commissioners have taken jurisdiction, unless the proceedings are void or so defective as to be an absolute nullity, since an injunction would amount to a collateral attack. (Citing 29 Cor. Jur. 494.)

We believe the mere resolutions adopted by the board of supervisors fall so far short of the intendments of the Political Code as to be void, and that the initial steps taken are so defective as to be an absolute nullity. Injunction should issue against the planting of trees on defendant's

premises. The state of California has provided laws whereby the county may acquire the land of an individual for public purposes, after a full hearing and the payment to the individual of his just damages. Let the plaintiff herein pursue that method.

The judgment is reversed.

Marks, Acting P. J., and Barnard, J., concurred