[Civ. No. 13805. First Dist., Div. Two. Mar. 11, 1949.]

JOHN KAN et al., Plaintiffs, v. ERNEST TSANG et al., Appellants; CHARLES T. BUTTERWORTH, as Receiver, etc., et al., Respondents.

Alden Ames and Sidney A. Romer for Plaintiffs.

Robert E. Hatch for Appellants.

Mahaney & McDonald for Respondents.

DOOLING, J.—This is an appeal from an order allowing respondent Butterworth $4,000 for services as receiver and respondent Mahaney $6,000 for services as the receiver's attorney.

The action was one for the dissolution of a partnership and for an accounting. The partnership was formed for the operation of a restaurant in San Francisco known as the Cathay House. The partnership was a limited one, the appellant Tsang being the only general partner and as such having full management of the business. Serious friction developed between Tsang and some of the other partners, in particular the plaintiff John Kan, which led to other litigation including that decided by Division One of this court in *Tsang* v. *Kan,* 78 Cal.App.2d 275 [177 P.2d 630]; and shortly before the commencement of this litigation Kan had gone so far as to appear in the restaurant premises armed with a gun. The complaint prayed for the appointment of a receiver and the court appointed the respondent Butterworth. No appeal was taken from the order appointing the receiver and the fact that counsel for the appellants herein may have opposed the appointment before it was made can have no bearing on the only questions presented on this appeal, which are whether the evidence is sufficient to support the allowances made by the court and whether the court abused its discretion in denying a motion to reopen the proceedings for further cross-examina-

tion of the respondents after the matter had once been submitted for decision.

The receiver was appointed June 3, 1946, and immediately took over the property and business. He continued Tsang in the management thereof under his supervision, no change being made in the manner of operation or in the employees of the restaurant. On August 15, 1946, upon application of the receiver the court authorized the employment of respondent Mahaney as his attorney. On August 8, 1946, an interlocutory decree of dissolution was entered by the court on stipulation of the parties and on August 30, 1946, the receiver pursuant to an order of the court sold at public auction all of the assets of the business ''save and except only money and money in bank'' to appellant Tsang for $25,100.

It is appellants' contention that the services of the receiver and his attorney were only nominal and practically terminated with the sale of the business to Tsang on August 30, 1946. The evidence given by the receiver and his attorney substantially contradicts this assertion.

The partnership did a gross business of $88,000 in the three months between the appointment of the receiver and the sale of the business to Tsang. Its annual profits amounted to $60,000. There was $130,000 belonging to the partnership in bank which was taken over by the receiver together with promissory notes from Tsang to the partnership aggregating $34,000. Up until the time of the sale to Tsang the receiver was at the restaurant at least once every day, seven days per week, and generally twice. He signed all checks on the bank account and saw that the receipts of the business were deposited in bank. He conducted the sale at which the assets of the business were sold. His presence prevented any disrupting incidents among the partners and the volume and profits of the business were as great as before despite the pending action and the ill feeling among the partners.

For reasons undisclosed by the record the sale to Tsang was not confirmed by the court until September 19, 1947. However it does appear that after the sale a conference was held by the receiver and his attorney with counsel for the parties at which an agreement was reached apportioning insurance premiums and other items in such fashion that Tsang on account of the sale was charged an amount in excess of his bid of $25,100 and in the account of the receiver not finally acted upon by the court until September 26, 1947,

there was still a disputed item as a part of the sale to Tsang of $384.95.

In the meantime, the sale not having been confirmed, it was the obvious duty of the receiver as well as his legal responsibility to see that the business was properly run so that its value would not be depreciated. After the sale to Tsang and before its confirmation, a period of about one year, the receiver testified that he spent 110 or more days at the restaurant. This involved not only a general supervision but the settlement and allowance of claims against the business and of conflicting claims made by the partners.

■ The attorney for the receiver testified that the receiver during the entire period consulted with him on an average of two or three times per week. The attorney also advised the accountants who were employed to audit the books on numerous occasions, held conferences with counsel, prepared accounts for presentation to the court and made several court appearances as did the receiver. The attorney estimated that he had devoted about 80 days to the business of the receivership. The money to be distributed to the partners will amount to about $200,000. Many disputed items in the receiver's accounts and reports were settled by negotiation and there still remained four objections to be settled by the court by the same order which allowed the compensation here in issue. With the settlement of those objections and the allowance of an attorney's fee to appellant's attorney for services rendered to the partnership, through the negotiations and good offices of the receiver and his attorney the assets appear ready for distribution to the parties without further dispute.

The trial court was in a better position to know the necessity for the services performed by the receiver and his attorney and to assess their reasonable value than is this court. From the above recital, which might be amplified by detail, it is apparent that this court cannot say that the compensation allowed to the receiver and his attorney is not supported by the evidence. (22 Cal.Jur., Receivers, § 125, pp. 533-4, § 129, p. 536.)

In view of appellants' attempt to minimize the value of the services, particularly after the sale, a letter of appellant Tsang to the receiver dated October 19, 1946, over a month and a half after the sale to Tsang, is of interest. In it Tsang thanks the receiver ''for your very understanding way of handling the whole affair'' and adds: ''I greatly appreciate the many times that you have answered my calls for assistance,

especially in the matter of taking inventories and the many other matters pertaining to the discharge of your duties as receiver.''

■ Two hearings were held on the application of the receiver and his attorney for compensation at the second of which counsel for appellants cross-examined both the receiver and his attorney. The matter was then submitted. Thereafter counsel for appellants moved the court to reopen the hearing to permit him to further cross-examine the receiver and his attorney. The only excuse offered for the request to reopen the hearing was given in an affidavit of counsel for appellants wherein he stated that ''affiant ... submitted said matter particularly in mind of the situation that the court stated that it was late for an appointment and was anxious to get away.'' No showing was made that the court would not have granted a continuance for further cross-examination if so requested and the mere fact that ''that evening affiant came to the sober realization that he was not fairly discharging his duty to his clients ... without eliciting the detail of the services ...'' was not sufficient to make it an abuse of discretion to refuse to set aside the submission to which affiant had voluntarily agreed. The affidavit contains much reference to the failure of the receiver's attorney to furnish the affiant with copies of two written documents from which he had read at the hearings. Since affiant had submitted the matter with knowledge that he had not then had the opportunity to read either of these documents the failure to supply him with copies after the submission could furnish no ground for setting it aside.

■ It is not an abuse of discretion to refuse to set aside a submission for the taking of further testimony unless a good excuse is offered for the failure to produce the testimony before submission. (*Loftus* v. *Fischer*, 113 Cal. 286, 289 [45 P. 328]; *San Francisco Breweries* v. *Schurtz*, 104 Cal. 420 [38 P. 92]; *Bovais* v. *Cassassa*, 108 Cal.App. 649 [291 P. 886]; *Chase* v. *Sunset Mutual Life Assn.*, 101 Cal.App. 625 [281 P. 1054]; *Houghton* v. *Lawton*, 63 Cal.App. 218 [218 P. 475]; 24 Cal.Jur. 770.)

■ The allowance to the receiver was expressed to be ''on account for services rendered'' and that to his attorney ''as partial compensation to be paid on account.'' It would have been better practice for the court to fix the full compensation to be allowed to the date of the order in view of the fact that the services were practically completed. We express no opinion on the question whether the facts would justify a

further allowance since that question is not now before us. The burden of making a showing for additional compensation, if any is asked for or allowed, should be on the receiver and his attorney.

The order appealed from is affirmed.

Nourse, P. J., and Griffin, J. pro tem., concurred.